Todd D. Carpenter, Cal. State Bar No. 234464
todd@lcllp.com
Jennifer M. French, Cal. State Bar No. 265422
jennf@lcllp.com
**LYNCH CARPENTER, LLP**
9171 Towne Centre Drive, Suite 180
San Diego, California 92122
Telephone: 619-762-1900
Facsimile: 858-313-1850

*Attorneys for Plaintiffs*
*and the Putative Class*

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STACI VALDEZ, DANIELLE KERSTETTER, KYLE KERSTETTER, JOSH TEPERSON, and ANGELA WALDNER, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>KELLOGG SUPPLY, INC., a California corporation, and DOES 1-20, inclusive,<br><br>Defendants. | Case No. 3:25-cv-02917-CAB-MMP<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT for:**<br><br>1) Violation of California's Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200–17208);<br><br>2) Violation of California's False Advertising Law (Cal. Bus. & Prof. Code §§ 17500–17509);<br><br>3) Violation of California's Consumer Legal Remedies Act (Cal. Civ. Code §§ 1750–1784);<br><br>4) Breach of Express Warranty (Cal. Com. Code § 2313);<br><br>5) Breach of Implied Warranty (Cal. Com. Code § 2314);<br><br>6) Violation of the New York Consumer Protection from Deceptive Acts & Practices Act (N.Y. Gen. Bus. Law § 349);<br><br>7) Violation of the New York False Advertising Act (N.Y. Gen. Bus. Law § 350); and<br><br>8) Unjust Enrichment.<br><br>**DEMAND FOR JURY TRIAL** |

FIRST AMENDED CLASS ACTION COMPLAINT

## I.    INTRODUCTION

1.    This consumer class action arises out of Kellogg Supply, Inc.'s false advertising of its organic soil and fertilizer products (the Products). Kellogg falsely represents that the Products are organic even though they contain synthetic, non-organic, and harmful forever chemicals known as perfluoroalkyl and polyfluoroalkyl substances (PFAS).

2.    Kellogg uses the term organic to induce consumers into believing that the Products contain only naturally occurring, non-synthetic ingredients and are therefore a superior alternative to competing—and less expensive—products that are not labeled as organic. Reasonable consumers do not expect Kellogg's organic Products to contain toxic forever chemicals like PFAS, especially when marketed for use in residential gardens to grow fruits and vegetables. Kellogg fails to disclose that PFAS are present in its Products because it knows that this likely would influence their purchasing decisions to Kellogg's financial detriment.

3.    Plaintiffs Staci Valdez, Danielle Kerstetter, Kyle Kerstetter, Josh Teperson, Angela Waldner, and Class members would not have purchased, or would have paid less money for, Kellogg's organic Products had they known that the Products contain PFAS. Kellogg's misleading, deceptive, and false advertising, and its unlawful, unfair, and fraudulent business practices, caused Valdez, the Kerstetters, Teperson, Waldner, and Class members to purchase, purchase more of, or pay more for the Products than they would have but for Kellogg's misrepresentations.

## II.    PARTIES

4.    Valdez, the Kerstetters, Teperson, and Waldner are consumers who relied on Kellogg's false advertisements to purchase the Products, and they bring this action on behalf of themselves and all those similarly situated.

5.    Staci Valdez resides in San Diego County, California. On or about March 23, 2025, Valdez purchased Kellogg Garden Organics All Natural Indoor Potting Mix from the Home Depot store located at 1001 N El Camino Real, Encinitas, CA 92024.

FIRST AMENDED CLASS ACTION COMPLAINT

Valdez reviewed the labels on the Kellogg Garden Organics All Natural Indoor Potting Mix bag and relied on the representations that the Product was organic when she decided to purchase it. Valdez would not have purchased the Kellogg Garden Organics All Natural Indoor Potting Mix, and would not have paid the price premium that organic products command, had she known that it contained synthetic, inorganic PFAS.

6.     Valdez continues to desire to purchase organic soil and believes she would purchase organic soil if they were truly organic and did not contain PFAS. She would purchase one of Kellogg's Products again if she could have confidence regarding the truth of its advertisements. But because of Kellogg's ongoing false, deceptive, and misleading advertising, Valdez will be unable to rely on the advertising and packaging when deciding in the future whether to purchase Kellogg's organic soil Products. She will be harmed if, in the future, she is left to guess whether Kellogg's Products contain PFAs and whether the Products are worth the prices charged.

7.     Danielle and Kyle Kerstetter also reside in San Diego County, California. On or about September 30, 2024, the Kerstetters purchased Kellogg Garden Organics Raised Bed & Potting Mix and Kellogg Garden Organics Amend Garden Soil for Flowers and Vegetables from the Home Depot website and picked them up at the store located at 7530 Broadway, Lemon Grove, CA 91945. That same month, on or about September 2024, the Kerstetters purchased Kellog Garden Organics Plus Patio Premium Outdoor Potting Mix from the same Home Depot store in Lemon Grove. The Kerstetters reviewed the labels on the Products' packaging and relied on the representations that the Products were organic when they decided to purchase them. The Kerstetters would not have purchased the Products, would not have purchased as many Products, and would not have paid the price premium that organic products command had they known that the Products contained synthetic, inorganic PFAS.

8.     The Kerstetters continue to desire to purchase organic soil and believe they would purchase organic soil if it was truly organic and did not contain PFAS. They would purchase one of Kellogg's Products again if they could have confidence regarding the

FIRST AMENDED CLASS ACTION COMPLAINT

truth of its advertisements. But because of Kellogg's ongoing false, deceptive, and misleading advertising, the Kerstetters will be unable to rely on the advertising and packaging when deciding in the future whether to purchase Kellogg's organic soil Products. They will be harmed if, in the future, they are left to guess whether Kellogg's Products contain PFAs and whether the Products are worth the prices charged.

9.    Josh Teperson resides in San Diego County, California, as well. In May of 2025, Teperson purchased Kellog Garden Organics All Natural Garden Soil for Flowers & Vegetables from the Home Depot store located at 1001 N El Camino Real, Encinitas, CA 92024. Teperson reviewed the label on the Kellog Garden Organics All Natural Garden Soil for Flowers & Vegetables packaging and relied on the representation that the soil was organic when he decided to purchase it. Teperson would not have purchased the Kellog Garden Organics All Natural Garden Soil for Flowers & Vegetables Product, and would not have paid the price premium that organic products command, had he known that it contained synthetic, inorganic PFAS.

10.    Teperson continues to desire to purchase organic soil and believes he would purchase organic soil if they were truly organic and did not contain PFAS. He would purchase one of Kellogg's Products again if he could have confidence regarding the truth of its advertisements. But because of Kellogg's ongoing false, deceptive, and misleading advertising, Teperson will be unable to rely on the advertising and packaging when deciding in the future whether to purchase Kellogg's organic soil Products. He will be harmed if, in the future, he is left to guess whether Kellogg's Products contain PFAs and whether the Products are worth the prices charged.

11.    Angela Waldner resides in Bergen County, New Jersey. On or about April 11, 2025, Waldner purchased Kellog Garden Organics All Natural Garden Soil for Flowers & Vegetables and Kellogg Garden Organics Raised Bed & Potting Mix from the Home Depot store located at 43 Hutton Ave, Nanuet, NY 10954. Waldner reviewed the labels on the Products' packaging and relied on the representations that the Products were organic when she decided to purchase them. Waldner would not have purchased the

3

FIRST AMENDED CLASS ACTION COMPLAINT

Products, would not have purchased as many Products, and would not have paid the price premium that organic products command had she known that they contained synthetic, inorganic PFAS.

12. Waldner continues to desire to purchase organic soil and believes she would purchase organic soil if they were truly organic and did not contain PFAS. She would purchase one of Kellogg's Products again if she could have confidence regarding the truth of its advertisements. But because of Kellogg's ongoing false, deceptive, and misleading advertising, Waldner will be unable to rely on the advertising and packaging when deciding in the future whether to purchase Kellogg's organic soil Products. She will be harmed if, in the future, she is left to guess whether Kellogg's Products contain PFAs and whether the Products are worth the prices charged.

13. Class members will also continue to purchase the Products, reasonably, but incorrectly, believing that they are organic, based on the unlawful conduct alleged herein.

14. Valdez, the Kerstetters, Teperson, Waldner, and the Class may again, by mistake, purchase a Product containing PFAS under the reasonable but false impression that the Products no longer contain PFAS and that Kellogg's representation that the Products are organic is true. But without a substantial, time-consuming, and costly investigation, Valdez, the Kerstetters, Teperson, Waldner, and the Class will have no way of knowing whether Kellogg has deceived them again.

15. Absent an equitable injunction prohibiting Kellogg from continuing in the unlawful course of conduct alleged herein, Valdez, the Kerstetters, Teperson, Waldner, the Class, and the public will be irreparably harmed and denied an effective and completely remedy because they face a real and tangible threat of future harm due to Kellogg's ongoing and deceptive conduct that cannot be remedied with monetary damages. Valdez, the Kerstetters, Teperson, Waldner, the Class, and the public thus lack an adequate remedy at law, and an injunction is the only form of relief that will guarantee that Valdez, the Kerstetters, Teperson, Waldner, and the Class the appropriate assurances.

FIRST AMENDED CLASS ACTION COMPLAINT

16.    Valdez, the Kerstetters, Teperson, and Waldner also lack an adequate remedy at law because they have not yet developed the damages model necessary to determine whether actual damages will fully compensate the monetary harm suffered, or whether equitable restitution will be required to make them whole. Legal damages are traditionally limited to actual out-of-pocket losses (reliance damages) or lost benefit of the bargain (expectancy damages), whereas equitable restitution focuses on restoring ill-gotten gains and wrongfully obtained by the defendant from the plaintiff/class members. There is no certainty at this point in the litigation that a legal remedy will be available, quantifiable, or coextensive with equitable relief.

17.    California law prohibits recovery of benefit-of-the-bargain damages in consumer deception cases but permits recovery of the same measure through equitable relief.[1] For example, Valdez, the Kerstetters, Teperson, and other California Class members may be entitled to recover the difference between the price paid and the value received—a measure unavailable at law but recoverable in equity. Until Valdez, the Kerstetters, and Teperson retain an expert and complete the necessary economic analysis, it remains uncertain whether legal damages will even be viable, let alone adequate. Accordingly, Valdez, the Kerstetters, and Teperson credibly allege at this stage that no adequate legal remedy exists.

18.    In addition, Valdez, the Kerstetters, and Teperson lack an adequate remedy at law because their claims under California's Unfair Competition Law (UCL) sweep more broadly than their claims California's Consumer Legal Remedies Act (CLRA). Although Valdez, the Kerstetters, and Teperson's UCL claim under the "fraudulent" prong applies the same "reasonable consumer" standard as the CLRA, their claim under the "unfair" prong reaches substantially further. As alleged, Kellogg's conduct may be deemed "unfair" where it offends established public policies or constitutes immoral, unethical, oppressive, or unscrupulous conduct that substantially injures consumers—harms not fully captured by the CLRA's remedial scheme. Because these broader injuries

---

[1] *See* Cal. Civ. Code § 3343(b).

FIRST AMENDED CLASS ACTION COMPLAINT

do not have an adequate legal remedy under the CLRA, and the UCL independently authorizes equitable relief to remediate such conduct, Valdez, the Kerstetters, and Teperson credibly allege that legal damages are inadequate. As such, Valdez, the Kerstetters, and Teperson properly plead parallel claims for legal damages and equitable restitution at this stage.

19.    Finally, Valdez, the Kerstetters, and Teperson lack an adequate remedy at law because the UCL (an equitable cause of action) carries a statute of limitations of four years, while the CLRA (which can provide legal damages and equitable restitution) carries a shorter, three-year statute of limitations.[2] Thus, dismissal of Valdez, the Kerstetters, and Teperson's (equitable) UCL claims would wipe out an entire year's worth of monetary recovery for the California Class.

20.    Defendant Kellogg Supply, Inc. is a corporation organized and existing under the laws of the state of California, with its headquarters and principal place of business at 350 West Sepulveda Boulevard, Carson, California 90745. Kellogg markets its Products under the names Kellogg Garden Products, Kellogg Garden Organics, and NearSource Organics.

21.    Valdez, the Kerstetters, Teperson, and Waldner are unaware of the true names or capacities of the Defendants sued herein under the fictitious names Does 1 through 20 but pray for leave to amend and serve such fictitiously named Defendants once their names and capacities become known.

22.    Valdez, the Kerstetters, Teperson, and Waldner allege on information and belief that the named and Doe Defendants were: (1) acting as express agents, implied agents, ostensible agents, servants, partners, and/or employees of each other; (2) acting within the scope of and under such agency and employment, and with the full knowledge, consent, permission, approval, and ratification, either express or implied, of each of the other Defendants and benefited from the actions of every other Defendant, thereby adopting such conduct and actions as their own; (3) acting as each other's alter egos; and

---

[2] Cal. Bus. & Prof. Code § 17208; Cal. Civ. Code § 1783.

FIRST AMENDED CLASS ACTION COMPLAINT

(4) aiding and abetting and offering substantial assistance to each other in the commission of the alleged wrongful acts.

23.    Valdez, the Kerstetters, Teperson, and Waldner are informed and believe, and based thereon allege, that each Defendant is in some manner intentionally, negligently, or otherwise responsible for the acts, omissions, occurrences, and transactions alleged herein.

### III.    JURISDICTION AND VENUE

24.    This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because the amount in controversy exceeds $5 million, there are more than 100 proposed Class members, and minimal diversity is met. Waldner is a citizen of New Jersey, and Kellogg is a citizen of California.

25.    This Court has personal jurisdiction over Kellogg because it is a California corporation with its headquarters and principal place of business in California. Kellogg has marketed, promoted, and sold its Products in California throughout the Class Period (i.e., the statute of limitations preceding the filing of this action).

26.    Venue is proper under 28 U.S.C. § 1391(b)(2) and California Civil Code § 1780(d) because a substantial part of the events or omissions giving rise to Valdez, the Kerstetters, and Teperson's claims occurred while they resided in this judicial district.

### IV.    FACTUAL ALLEGATIONS

**A.    PFAS Are Not Organic**

27.    Merriam-Webster's Dictionary defines organic as "of, relating to, or derived from living organisms."[3] The common understanding of the phrase "organic fertilizer" refers to ingredients that are derived or harvested from once-living plants or animals.[4] In

---

[3] *Organic*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/organic (last visited Jan. 30, 2026).

[4] Sally Reill, *A Guide to Understanding Fertilizers*, OSU Extension Service (pub. Jan. 2019, reviewed 2024), https://extension.oregonstate.edu/gardening/techniques/guide-understanding-fertilizers.

FIRST AMENDED CLASS ACTION COMPLAINT

California, "natural organic fertilizer" means "materials derived from either plant or animal products" that "shall not be mixed with synthetic materials."[5]

28.    PFAS are highly resistant synthetic chemicals used in widespread industrial and consumer products since the 1940s.[6] In 2024, the U.S. Environmental Protection Agency declared the two most studied and produced types of PFAS—perfluorooctanoic acid (PFOA) and perfluorooctane sulfonate (PFOS)—as dangerous substances.[7]

29.    PFAS persist and bioaccumulate in the food chain when released into the environment and build up in the body when humans consume PFAS-contaminated food or water or are otherwise exposed to PFAS.[8] Exposure to PFAS, even at low parts-per-trillion, can build up in the human body over time and cause severe adverse health effects.[9] Because of the cumulative effect, even a de minimus amount of PFAS exposure can negatively impact health.[10]

30.    The United States Department of Agriculture's National Organic Program develops and enforces national standards for organic crops, livestock, and agricultural

---

[5] Cal. Food & Agric. Code § 1548.

[6] *PFAS Explained*, U.S. EPA 1 (2024), https://www.epa.gov/system/files/documents/2023-10/final-virtual-pfas-explainer-508.pdf.

[7] Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C.A. § 9602(a); 40 C.F.R. § 302.4, App. A; Designation of Perfluorooctanoic Acid (PFOA) and Perfluorooctanesulfonic Acid (PFOS) as CERCLA Hazardous Substances, 89 Fed. Reg. 39,124-01, 39,125 (May 8, 2024).

[8] Sibel Barisci & Rominder Suri, *Occurrence and Removal of Poly/Perfluoroalkyl Substances (PFAS) in Municipal and Industrial Wastewater Treatment Plants*, 84(12) Water Science & Tech. 3442, 3443 (2021), https://pdfs.semanticscholar.org/3b10/37f0c12ad3757c8ffd0922cff95ab36ecb46.pdf.

[9] *See* Rabia Amen, et al., *A Critical Review on PFAS Removal from Water: Removal Mechanism and Future Challenges*, 15 Sustainability 16173, at 1–3 (2023), https://www.mdpi.com/2071-1050/15/23/16173/pdf; *see also* U.S. National Institute of Environmental Health Sciences, *Perfluoroalkyl and Polyfluoroalkyl Substances (PFAS)* (last reviewed May 6, 2025), https://www.niehs.nih.gov/health/topics/agents/pfc; Cleveland Clinic, *What Are Forever Chemicals (PFAS)? 5 Ways Forever Chemicals (PFAS) May Affect Your Health* (June 6, 2024), https://health.clevelandclinic.org/what-are-forever-chemicals-pfas.

[10] *PFAS Explained*, *supra* note 4, at 1; *see also* Molly M. Ginty & Courtney Lindwall, *"Forever Chemicals" Called PFAS Show Up in Your Food, Clothes and Home*, Nat'l Res. Def. Council (updated Sept. 18, 2025), https://www.nrdc.org/stories/forever-chemicals-called-pfas-show-your-food-clothes-and-home.

---

8

FIRST AMENDED CLASS ACTION COMPLAINT

products sold in the United States.[11] Agricultural products are any commodity or product derived from livestock marketed for either human or livestock consumption.[12] The USDA standards do not apply to non-food products, including soils and fertilizers, and the USDA does not regulate the use of "organic" for non-food products.[13] Nevertheless, non-food products like soil and fertilizers can meet non-government, privately maintained standards that rely on the USDA regulations, like those created by the Organic Material Review Institute (OMRI).[14]

31.    Under USDA regulations, "organic matter" means the "remains, residues, or waste products of any organism."[15] And the USDA defines "organic fraud" as the "deceptive representation, sale, or labeling of nonorganic agricultural products or ingredients as 100 percent organic, organic, or made with organic [ingredients]."[16]

32.    The USDA maintains a National List of Allowed and Prohibited Substances for organic production.[17] In general, the National List allows nonsynthetic materials and prohibits the use of synthetic materials unless they are specifically identified.[18] The National List does not identify any "allowed" PFAS.

33.    Put simply, PFAS do not fall within any definition of organic, and no reasonable customer purchasing organic soil or fertilizer would expect their organic product to contain PFAS.

---

[11] USDA Agriculture Marketing Service, *National Organic Program*, https://www.ams.usda.gov/about-ams/programs-offices/national-organic-program (last visited Jan. 30, 2026); *see also* USDA Agriculture Marketing Service, *USDA Certified Organic: Understanding the Basics*, https://www.ams.usda.gov/services/organic-certification/organic-basics (last visited Jan. 30, 2026).

[12] Organic Foods Production Act of 1990, 7 U.S.C. § 6502.

[13] OMRI, *What We Do*, https://www.omri.org/what-we-do (last visited Jan. 30, 2026).

[14] *Id.*

[15] 7 C.F.R. § 205.2.

[16] *Id.* (citation modified).

[17] 7 C.F.R. §§ 205.600–205.602.

[18] *Id.* §§ 205.601, 206.602; *see also* USDA Agriculture Marketing Service, *The National List of Allowed and Prohibited Substances*, https://www.ams.usda.gov/rules-regulations/organic/national-list (last visited Jan. 30, 2026).

FIRST AMENDED CLASS ACTION COMPLAINT

**B. Kellogg's Products Contain Inorganic PFAS**

34. The Products at issue consist of all Kellogg soil and fertilizer products with packaging that represents they are organic. The Products include, but are not limited to: Kellogg Garden Organics All Natural Garden Soil for Flowers & Vegetables, Kellogg Garden Organics Raised Bed & Potting Mix, Kellogg Garden Organics Amend Garden Soil for Flowers & Vegetables, Kellogg Garden Organics Patio Plus Premium Outdoor Potting Mix, Kellogg Garden Organics All Natural Indoor Potting Mix, Kellogg Garden Organics All Natural Potting Mix Premium Mix for Outdoor Containers, and Kellogg Garden Organics, Palm, Cactus and Citrus All Purpose Indoor & Outdoor Mix.

35. During their investigation, Valdez, the Kerstetters, Teperson, and Waldner's counsel conducted laboratory tests of various Products with the assistance of qualified expert technicians and consultants. The consultants and internal investigators purchased various Products from over a dozen different locations in Northern and Southern California, New York, New Jersey, and Oregon in 2024 and 2025 (the Sample Products). They transported the Sample Products to lab technicians while following proper chain-of-custody procedures, and the technicians securely tested the Sample Products for PFAS. Valdez, the Kerstetters, Teperson, and Waldner's team also secured, sampled, transported, and tested Waldner, the Kerstetters, Teperson, and Valdez's own Products (the Plaintiffs' Products).

36. Valdez, the Kerstetters, Teperson, and Waldner's experts used EPA Method 1633A to test all Sample Products. The EPA and Department of Defense developed EPA Method 1633A to analyze PFAS in various environmental samples, including soil.[19] The experts compared their results with the EPA's Soil Screening Guidance, designed to help environmental and science professionals evaluate contaminated soil.[20] Generally, if

---

[19] U.S. EPA, *Method 1633, Revision A: Analysis of Per- and Polyfluoroalkyl Substances (PFAS) in Aqueous, Solid, Biosolids, and Tissue Samples by LC-MS/MS* at 1 (Dec. 2024), https://www.epa.gov/system/files/documents/2024-12/method-1633a-december-5-2024-508-compliant.pdf.

[20] U.S. EPA Office of Emergency & Remedial Response, *USEPA Soil Screening Level Guidance* at 1 (July 1996), https://semspub.epa.gov/work/HQ/175238.pdf.

FIRST AMENDED CLASS ACTION COMPLAINT

contaminate concentrations fall below identified soil screening levels (SSLs), CERCLA does not require any further action or study.[21]

37.     The laboratory tested for PFAS in Kellogg's Products by comparing their results to the EPA Regional Screening Levels (RSLs), EPA Risk-based SSLs, and EPA Maximum Contaminant Level (MCL)-based SSLs for each type of PFAS.

38.     Testing revealed that each of Kellogg's organic Products contained numerous PFAS, many of which exceeded applicable RSL and SSLs. In other words, under the EPA's guidance, the levels of PFAS found in Kellogg's Products could trigger further action or study under CERCLA. And none of the Products are organic, despite Kellogg's advertised claims.

***Kellogg Garden Organics All Natural Garden Soil for Flowers & Vegetables***

39.     Testing of the Kellogg Garden Organics All Natural Garden Soil for Flowers & Vegetables Sample Products revealed the presence of multiple PFAs, including PFOA and PFOS, and the PFOA and PFOS results exceeded applicable RSL and SSLs.

40.     Tests of Plaintiffs' Products revealed similar results to the Sample Products:

   a.     Teperson's Kellogg Garden Organics All Natural Garden Soil for Flowers & Vegetables tested positive for multiple PFAS, including PFOA and PFOS. The PFOA and PFOS results both exceeded applicable RSL and SSLs.

   b.     Similarly, Waldner's Kellogg Garden Organics All Natural Garden Soil for Flowers & Vegetables tested positive for multiple PFAS, including PFOS. The PFOS result also exceeded applicable SSLs.

41.     These analytical results indicate that the Kellogg Garden Organics All Natural Garden Soil for Flowers & Vegetables Product is not organic because it contains PFAS—two of which have been designated by the EPA as hazardous substances under CERCLA—which are not related to or derived from living organisms.

---

[21] *Id.*

FIRST AMENDED CLASS ACTION COMPLAINT

***Kellogg Garden Organics Raised Bed & Potting Mix***

42.  Testing of the Kellogg Garden Organics Raised Bed & Potting Mix Sample Products revealed the presence of multiple PFAs, including PFOA and PFOS, and the PFOA and PFOS results exceeded applicable RSL and SSLs.

43.  Tests of Plaintiffs' Products revealed similar results to the Sample Products:

a.  The Kerstetters' Kellogg Garden Organics Raised Bed & Potting Mix Product revealed similar results to the Sample Products. It tested positive for multiple PFAS, including PFOA and PFOS, and the PFOA and PFOS results both exceeded applicable RSL and SSLs.

b.  Similarly, Waldner's Kellogg Garden Organics Raised Bed & Potting Mix Product tested positive for multiple PFAS, including PFOS. The PFOS result also exceeded applicable SSLs.

44.  These analytical results indicate that the Kellogg Garden Organics Raised Bed & Potting Mix Product is not organic because it contains PFAS—two of which have been designated by the EPA as hazardous substances under CERCLA—which are not related to or derived from living organisms.

***Kellogg Garden Organics Amend Garden Soil for Flowers & Vegetables***

45.  Tests revealed that Kellogg Garden Organics Amend Garden Soil for Flowers & Vegetables Sample Products contain multiple PFAs, including PFOA and PFOS. When present, the PFOA and PFOS results exceeded applicable RSL and SSLs.

46.  Tests of the Kerstetters' Kellogg Garden Organics Amend Garden Soil for Flowers & Vegetables Product revealed similar results to the Sample Products. It tested positive for multiple PFAS, including PFOA and PFOS, and the PFOA and PFOS results both exceeded applicable RSL and SSLs.

47.  These analytical results indicate that the Kellogg Garden Organics Amend Garden Soil for Flowers & Vegetables Product is not organic because it contains PFAS—two of which have been designated by the EPA as hazardous substances under CERCLA—which are not related to or derived from living organisms.

FIRST AMENDED CLASS ACTION COMPLAINT

***Kellogg Garden Organics Patio Plus Premium Outdoor Potting Mix***

48.     Tests revealed that Kellogg Garden Organics Patio Plus Premium Outdoor Potting Mix Sample Products contain multiple PFAs, including PFOA and PFOS, and the PFOA and PFOS results exceeded applicable RSL and SSLs.

49.     Tests of the Kerstetters' Kellogg Garden Organics Patio Plus Premium Outdoor Potting Mix Product revealed similar results to the Sample Products. It tested positive for multiple PFAS, including PFOA and PFOS, and the PFOA and PFOS results both exceeded applicable RSL and SSLs.

50.     These analytical results indicate that Kellogg Garden Organics Patio Plus Premium Outdoor Potting Mix Product is not organic because it contains PFAS—two of which have been designated by the EPA as hazardous substances under CERCLA—which are not related to or derived from living organisms.

***Kellogg Garden Organics All Natural Indoor Potting Mix***

51.     Tests revealed that Kellogg Garden Organics All Natural Indoor Potting Mix Sample Products contains multiple PFAs, including PFOA and PFOS, and the PFOA and PFOS results exceeded applicable RSL and SSLs.

52.     Tests of Valdez's Kellogg Garden Organics All Natural Indoor Potting Mix Product revealed similar results to the Sample Products. It tested positive for multiple PFAS, including PFOA and PFOS, and the PFOA and PFOS results both exceeded applicable RSL and SSLs.

53.     These analytical results indicate that the Kellogg Garden Organics All Natural Indoor Potting Mix Product is not organic because it contains PFAS—two of which have been designated by the EPA as hazardous substances under CERCLA—which are not related to or derived from living organisms.

***Kellogg Garden Organics All Natural Potting Mix Premium Mix for Outdoor Containers***

54.     Tests revealed that Kellogg Garden Organics All Natural Potting Mix Premium Mix for Outdoor Containers Sample Products contains multiple PFAs,

13

FIRST AMENDED CLASS ACTION COMPLAINT

including PFOA and PFOS, and the PFOA and PFOS results exceeded applicable RSL and SSLs.

55.     These analytical results indicate that the Kellogg Garden Organics All Natural Potting Mix Premium Mix for Outdoor Containers Product is not organic because it contains PFAS—two of which have been designated by the EPA as hazardous substances under CERCLA—which are not related to or derived from living organisms.

**C.     Kellogg's False and Deceptive Advertising**

56.     On the packaging, Kellogg advertises to consumers that the Products are organic soil and/or fertilizers, safe to use on edible plants and residential gardening. These representations for each Product are false.

57.     For example, the packaging of Kellogg Garden Organics All Natural Garden Soil for Flowers & Vegetables appears as follows:




58.     On the front of the package, Kellogg markets its Kellogg Garden Organics All Natural Garden Soil for Flowers & Vegetables as an organic soil and implies that it is safe for use on fruit and vegetable plants by providing drawings of a tomato and a carrot

FIRST AMENDED CLASS ACTION COMPLAINT

with the text "FRUITS, VEGETABLES, & HERBS. Kellogg also includes a prominent logo from OMRI, indicating that the Products are "OMRI Listed for Organic Use."

59.    Images of packaging from each of the Products are attached to this complaint as Exhibit A.

60.    As discussed above, OMRI is a third-party, nonprofit organization that purports to verify the substances used in organic production, including soil and fertilizers. Companies like Kellogg obtain OMRI verification through a self-reporting application process from the companies seeking to use its label.[22] OMRI charges initial and annual company and product fees for the use of its "OMRI Listed" label.[23] The Company Fees vary according to the Company's Annual Gross Sales, with Initial Review Fees ranging from $610 to $7,500 and Annual Renewal Fees from $395 to $4,700.[24] Multi-ingredient Kellogg's Products have an initial review fee of $1,010 and an annual review fee of $655.[25] OMRI charges annual product fees for each company product, including products that are repackaged and marketed under a different name without any modification.[26]

61.    OMRI uses the definitions from the USDA National List of Allowed and Prohibited Substances when verifying whether a company's self-reported ingredients comply with its standards.[27] If one of those ingredients is synthetic—like PFAS—it would have to be allowed on the National List for the product to receive OMRI's stamp of approval.[28] But even though PFAS are not allowed on the National List, Valdez, the Kerstetters, Teperson, and Waldner are informed and believe that OMRI does not test for

---

[22] OMRI, *What to Expect*, https://www.omri.org/get-listed/what-expect (last visited Jan. 30, 2026.)

[23] OMRI, *Review Cost*, https://www.omri.org/review-cost (last visited Jan. 30, 2026).

[24] *Id.*

[25] *Id.*

[26] *Id.*

[27] OMRI, *What We Do*, *supra* note 11.

[28] USDA Agriculture Marketing Service, National Organic Program, *Guidance Classification of Materials* (NOP 5033), https://www.ams.usda.gov/sites/default/files/media/NOP-5033.pdf (last visited Jan. 30, 2026).

15

PFAS as part of their process. Kellogg's use of the OMRI "Listed for Organic Use" adds to the deception and false advertisement of the Products as organic.

62.     Kellogg's marketing, advertisements, and representations that its Products are organic and non-synthetic are false, misleading, and deceptive. Kellogg sells soil and fertilizer products made with ingredients that it knows, or should have known, contain PFAS. And Kellogg fails to disclose and/or conceals the presence of PFAS in its Products, fails to warn consumers of their harms, and falsely advertise its Products as organic despite the presence of PFAS.

## V.     CLASS ALLEGATIONS

63.     Valdez, the Kerstetters, Teperson, and Waldner bring this action on behalf of themselves, and all others similarly situated, under Federal Rule of Civil Procedure 23 and seek certification of the following Classes:

California Class: All persons who purchased any of the Products in the State of California for their personal use within the applicable statute of limitations period.

New York Class: All persons who purchased any of the Products in the State of New York for their personal use within the applicable statute of limitations period.

64.     The proposed Classes exclude Kellogg's current or former officers, directors, and employees; counsel for the parties; and the judicial officer to whom this lawsuit is assigned.

65.     There is a well-defined community of interest in the litigation, and the Classes are easily ascertainable:

a.     Numerosity: The members of the proposed Classes are so numerous that joinder of all members is impracticable. Valdez, the Kerstetters, Teperson, and Waldner are informed and believe that the proposed Classes contain hundreds of thousands of individuals who have been damaged by Kellogg's conduct. Valdez, the Kerstetters, Teperson, and Waldner do not know the precise number of proposed Class members.

FIRST AMENDED CLASS ACTION COMPLAINT

b.     Typicality: Valdez, the Kerstetters, Teperson, and Waldner's claims are typical of the Classes' claims because all Class members have been deceived (or were likely be deceived) by Kellogg's false and misleading implied advertising claims about the true chemical composition and ingredients contained in its Products. Valdez, the Kerstetters, Teperson, and Waldner advance the same claims and legal theories on behalf of themselves and all Class members.

c.     Adequacy: Valdez, the Kerstetters, Teperson, and Waldner will fairly and adequately protect the interests of the Classes. They have retained counsel experienced in complex consumer class action litigation and intend to prosecute this action vigorously. Valdez, the Kerstetters, Teperson, and Waldner do not have any antagonistic or adverse interests to those of the Classes.

d.     Superiority: The nature of this action and the nature of the laws available to Valdez, the Kerstetters, Teperson, Waldner, and the Classes make the use of the class action format a particularly efficient and appropriate procedure to afford relief to themselves and the Classes for the wrongs alleged. The damages or other financial detriment suffered by individual Class members is miniscule compared to the burden and expense that would be entailed by individual litigation of their claims against Kellogg. It would thus be virtually impossible for Valdez, the Kerstetters, Teperson, Waldner, and the Classes to obtain effective redress for the wrongs done to them on an individual basis.

e.     Public Policy Considerations: Absent the class action, the Classes and the public would not likely recover, or would not likely have the chance to recover, damages and/or restitution, or receive injunctive relief, and Kellogg will, and will continue to, retain the proceeds of its fraudulent and deceptive misdeeds. A class action serves the important public policy considerations underlying the statutes and the legislature's intent in enacting them.

66.     This action involves common questions of law and fact that predominate over any questions affecting individual proposed Class members, including:

FIRST AMENDED CLASS ACTION COMPLAINT

a.    whether Kellogg misrepresented material facts and/or failed to disclose material facts in connection with the packaging and advertising of the Products;

b.    whether Kellogg's use of false or deceptive packaging and advertising constituted false or deceptive advertising;

c.    whether Kellogg engaged in unfair, unlawful, and/or fraudulent business practices;

d.    whether Kellogg's conduct, as alleged herein, was intentional and knowing;

e.    whether Valdez, the Kerstetters, Teperson, Waldner, and the Classes are entitled to damages and/or restitution and in what amount;

f.    whether Kellogg is likely to continue false, misleading, or unlawful conduct such that an injunction is necessary; and

g.    whether Valdez, the Kerstetters, Teperson, Waldner, and the Classes are entitled to an award of reasonable attorney's fees, interest, and costs of suit.

67.    Kellogg engaged in a common course of conduct giving rise to the violations of the legal rights that Valdez, the Kerstetters, Teperson, Waldner, and the Classes seek to uniformly enforce. The claims involve similar or identical statutory violations, business practices, and injuries. The injuries sustained by Valdez, the Kerstetters, Teperson, Waldner, and the Classes flow, in each instance, from a common nucleus of operative fact—namely, Kellogg's deceptive packaging and advertising of the Products as organic. Each instance of harm suffered by Valdez, the Kerstetters, Teperson, Waldner, and the Classes is a direct result of a single course of illegal conduct. Kellogg exposed each Class member to the same or substantially similar deceptive practices, as the packaging of each Product bears the same representation (that the Product is organic). Individual questions, if any, are eclipsed by the numerous common questions presented in this action.

18
FIRST AMENDED CLASS ACTION COMPLAINT

68.     Kellogg has also acted, or failed to act, on grounds generally applicable to Valdez, the Kerstetters, Teperson, Waldner, and the Classes, supporting the imposition of uniform relief to ensure compatible standards of conduct towards the members of the Classes.

## VI.   CAUSES OF ACTION

### FIRST CAUSE OF ACTION
Violation of California's Unfair Competition Law
Cal. Bus. & Prof. Code §§ 17200–17208
(On Behalf of the California Class)

69.     Valdez, the Kerstetters, and Teperson repeat and re-allege the allegations contained in every preceding paragraph as if fully set forth herein.

70.     Under the UCL, an unfair business competition includes any unlawful, unfair, or fraudulent act or practice, as well as any unfair, deceptive, untrue or misleading advertising.[29]

71.     Valdez, the Kerstetters, and Teperson have standing to pursue this claim because they have suffered injury-in-fact and have lost money or property because of Kellogg's unlawful, unfair, and fraudulent actions. As described above, Valdez, the Kerstetters, and Teperson purchased the Products for their own personal use in reliance on Kellogg's false representations that the Products contained only organic ingredients and were therefore healthier, safer, and more environmentally friendly than the non-organic soil fertilizer alternatives. Instead, the Products contained synthetic, non-organic PFAS. As a result of Kellogg's misrepresentations, Valdez, the Kerstetters, and Teperson expended money in the transaction that they otherwise would not have had they known Kellogg's advertising claims were false.[30]

***Unfair Prong***

72.     A business act or practice is unfair under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or

---

[29] Cal. Bus. & Prof. Code § 17200.

[30] *See infra* ¶¶ 5–10.

19

FIRST AMENDED CLASS ACTION COMPLAINT

substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications, and motives of the practice against the gravity of the harm to the alleged victims.[31]

73.    Kellogg's conduct constitutes an unfair business practice because, as alleged above, Kellogg engaged in a false advertising campaign to mislead consumers into believing that by purchasing Kellogg's organic soil and/or fertilizer Products, they were receiving a product that only contained organic ingredients. There is no societal benefit from false advertising—only harm. Valdez, the Kerstetters, Teperson, and California Class members paid for an organic product that is not actually organic. While Valdez, the Kerstetters, Teperson, and the California Class were harmed, Kellogg was unjustly enriched by its false representations and omissions. Kellogg thus violated established public policy in support of truth in advertising, and engaged in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

74.    Kellogg's conduct harms the interests of consumers and market competition, and there is no valid justification for its conduct.

***Fraudulent Prong***

75.    A business act or practice is fraudulent under the UCL if it is likely to deceive members of the consuming public.[32]

76.    Kellogg engaged in a fraudulent business practice by knowingly representing to consumers that the Products were organic and were thus safer and healthier than potential alternative products sold without these claims. Kellogg's deceptive business practices deceived Valdez, the Kerstetters, Teperson, and the California Class who purchased the Products in reliance on Kellogg's false representations and advertisements.

77.    Kellogg knew, or should have known, that its material misrepresentations and omissions would be likely to deceive and harm the consuming public and result in

---

[31] *Ticconi v. Blue Shield of Cal. Life & Health Ins. Co.*, 160 Cal. App. 4th 528, 539 (2008) (citations omitted).

[32] *Schnall v. Hertz. Corp.*, 78 Cal. App. 4th 1144, 1167 (2000).

20

FIRST AMENDED CLASS ACTION COMPLAINT

consumers making payments to Kellogg for organic Products that are not, in fact, organic.

78.     This practice is devoid of utility and functions only to maximize Kellogg's profits at the expense of the consuming public. The gravity of harm to Valdez, the Kerstetters, Teperson, and the California Class who lost money or property by paying for the Products far outweighs any benefit Kellogg gained through its practice.

***Unlawful Prong***

79.     A business act or practice is unlawful under the UCL if it violates any other law or regulation.[33]

80.     Kellogg's actions, as alleged herein, constitute illegal and unlawful practices committed in violation of California's Food and Agricultural Code, which regulates the production and sale of organic fertilizer.[34] Fertilizer is misbranded if "its labeling is false or misleading in any particular way."[35] A fertilizer is adulterated if "its composition falls below or differs from that which it is purported to possess by its labeling" or if "an organic input material contains ingredients that, in type or amount, do not comply with the requirements of the National Organic Program standards."[36] As noted above, the Food and Agricultural Code defines an organic fertilizer as one made of materials "derived from either plant or animal products" that "shall not be mixed with synthetic materials."[37] And the USDA Organic Program's National List of Allowed and Prohibited Substances does not identify any "allowed" PFAS.[38] Kellogg's marketing of the Products as organic therefore violates the UCL.

---

[33] *Cel–Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999).

[34] Cal. Food & Agric. Code § 14502.

[35] *Id.* § 14681(a).

[36] *Id.* § 14682(b), (e).

[37] *Id.* § 1548.

[38] 7 C.F.R. §§ 205.601, 206.602; *see also* USDA Agriculture Marketing Service, *The National List of Allowed and Prohibited Substances*, https://www.ams.usda.gov/rules-regulations/organic/national-list (last visited Jan. 30, 2026).

21

FIRST AMENDED CLASS ACTION COMPLAINT

81. Kellogg's actions, as alleged herein, also violate California's False Advertising Law (FAL), as discussed further in the Second Cause of Action.

82. Additionally, Kellogg's actions, as alleged herein, constitute illegal and unlawful practices committed in violation of the CLRA, as discussed further in the Third Cause of Action.

83. Each of Kellogg's unfair, fraudulent, and unlawful practices enumerated above was the direct and proximate cause of financial injury to Valdez, the Kerstetters, Teperson, and the California Class. Kellogg has unjustly benefitted because of its wrongful conduct. Valdez, the Kerstetters, Teperson, and the California Class are accordingly entitled to restitution from Kellogg of all monies it wrongfully obtained from them as a result of the conduct alleged herein.

84. Kellogg's violations of the UCL through the unlawful, unfair, and fraudulent conduct alleged herein, are ongoing and present a continuing threat to Valdez, the Kerstetters, Teperson, the California Class, and the public who will be deceived into purchasing the Products based on misrepresentations that they are organic. These false representations led to financial harm for consumers like Valdez, the Kerstetters, Teperson, and the California Class as described above. These injuries cannot be reasonably avoided and will continue to be suffered by the consuming public absent a mandated change in Kellogg's practice.

85. Consequently, Valdez, the Kerstetters, Teperson, and the California Class are also entitled to preliminary and permanent injunctive relief enjoining Kellogg from continuing to engage in the unfair competition alleged above.[39]

## SECOND CAUSE OF ACTION
Violation of California's False Advertising Law
Cal. Bus. & Prof. Code §§ 17500–17509
(On Behalf of the California Class)

86. Valdez, the Kerstetters, and Teperson repeat and re-allege the allegations contained in every preceding paragraph as if fully set forth herein.

---

[39] Cal. Bus. & Prof. Code § 17203.

FIRST AMENDED CLASS ACTION COMPLAINT

87. Valdez, the Kerstetters, and Teperson have standing to pursue this claim because they suffered injury-in-fact and have lost money or property as a result of Kellogg's unlawful, unfair, and fraudulent actions, as alleged above.

88. Under the FAL, it is unlawful for a corporation to make any statement with intent to dispose of personal property that "is *untrue* or *misleading*, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading . . . ."[40]

89. The required intent is the intent to dispose of property, not the intent to mislead the public in the disposition of such property.

90. Kellogg violated the FAL by publicly disseminating false, misleading, and unsubstantiated advertisements that the Products are organic.

91. Kellogg made its false and misleading advertisements to increase the sales of the Products. Kellogg knew, or should have known, its advertisements for the Products were false and misleading. And Kellogg knew, or should have known, that consumers, including Valdez, the Kerstetters, Teperson, and the California Class, would believe that a soil or fertilizer labeled organic would be free from synthetic, non-organic chemicals like PFAS.

92. Valdez, the Kerstetters, Teperson, and the California Class have suffered harm as a result of Kellogg's violations of the FAL because they have paid monies for the Products that they otherwise would not have paid but for Kellogg's false and misleading statements.

93. Kellogg is aware, or, by the exercise of reasonable care, should have been aware, that the above representations were false and/or misleading. Valdez, the Kerstetters, Teperson, and the California Class have suffered injury-in-fact and have lost money as a result of Kellogg's false representations and false advertising.

94. Accordingly, Valdez, the Kerstetters, Teperson, and the California Class seek an order awarding class-wide restitution of all monies wrongfully acquired by

---

[40] Cal. Bus. & Prof. Code § 17500 (added emphasis).

23

FIRST AMENDED CLASS ACTION COMPLAINT

Kellogg. Valdez, the Kerstetters, Teperson, and the California Class also seek an order to enjoin Kellogg from continuing its unfair practices in violation of the FAL in the future. Without an injunction, Valdez, the Kerstetters, Teperson, the California Class, and the public will be irreparably harmed and/or denied an effective and complete remedy.

## THIRD CAUSE OF ACTION
Violation of California's Consumer Legal Remedies Act
Cal. Civ. Code §§ 1750–84
(On Behalf of the California Class)

95. Valdez, the Kerstetters, and Teperson repeat and re-allege the allegations contained in every preceding paragraph as if fully set forth herein.

96. As alleged herein, Valdez, the Kerstetters, and Teperson have standing to pursue this claim because they have suffered injury-in-fact and have lost money or property as a result of Kellogg's unlawful, unfair, and fraudulent actions, as alleged above.

97. The California legislature enacted the CLRA to protect consumers against unfair and deceptive business practices. The CLRA applies to Kellogg's acts and practices because the Act covers transactions involving the sale of goods to consumers.

98. Valdez, the Kerstetters, Teperson, and the California Class are consumers under the CLRA,[41] and they engaged in transactions under the Act, including purchasing the Products.[42] Kellogg is a person under the CLRA,[43] and the Products are qualified goods.[44]

99. Kellogg's unfair and deceptive business practices were intended to and did result in the sale of the Products.

100. Kellogg violated the CLRA by engaging in the following unfair and deceptive acts and practices:

---

[41] Cal. Civ. Code § 1761(d).
[42] Id. §§ 1761(e), 1770(a).
[43] Id. § 1761(c).
[44] Id. § 1761(a).

24
FIRST AMENDED CLASS ACTION COMPLAINT

(5) Representing that [the Products] have . . . characteristics . . . [and] benefits . . . that they do not have . . .

(7) Representing that [the Products] are of a particular standard, quality, or grade . . . if they are of another.

(9) Advertising [the Products] with intent not to sell them as advertised.

(16) Representing that [the Products] have been supplied in accordance with a previous representation when [they have] not.[45]

101. Kellogg violated the CLRA by representing that its Products are organic, when, in reality, the Products contain synthetic, non-organic PFAS.

102. Kellogg knew or should have known that its organic representations were false and misleading and by omitting the presence of PFAS in its Products, it was omitting a material fact that would alter any consumer's decision to purchase the Products.

103. Kellogg's violations of the CLRA proximately caused an injury in fact to Valdez, the Kerstetters, Teperson, and the California Class.

104. Valdez, the Kerstetters, Teperson, and the California Class purchased Kellogg's Products on the belief that they would have the advertised properties (i.e., that they were in fact organic). If Valdez, the Kerstetters, Teperson, and the California Class had known that Kellogg's Products did not contain the advertised high quality organic ingredients, and instead contained toxic and synthetic PFAS, they would not have purchased the Products. Indeed, no consumer would purchase an organic product unless they believed the product was organic.

105. As a direct and proximate result of Kellogg's conduct, Valdez, the Kerstetters, Teperson, and the California Class suffered injury and damages in an amount to be determined at trial.

106. On information and belief, Kellogg's actions were willful, wanton, and fraudulent.

---

[45] *Id.* § 1770(a)(5), (7), (9), (16) (citation modified).

FIRST AMENDED CLASS ACTION COMPLAINT

107. On information and belief, Kellogg's officers, directors, and/or managing agents authorized the use of these misleading statements and material omissions.

108. Valdez, the Kerstetters, and Teperson filed the required declaration of venue with this complaint.[46]

109. Valdez, the Kerstetters, Teperson, and the California Class are consumers who have suffered economic injury and damages as a result of Kellogg's unfair and deceptive business practices alleged herein. Valdez, the Kerstetters, and Teperson therefore seek an order enjoining such methods, acts, or practices and an order for restitution and disgorgement on behalf of themselves and the California Class, as well as any other relief the Court deems proper.[47] Valdez, the Kerstetters, and Teperson additionally seek costs and reasonable attorney's fees.[48]

110. On October 29, 2025, Valdez, the Kerstetters, and Teperson, through counsel, sent a CLRA demand letter to Kellogg on behalf of themselves and all other similarly situated consumers. The letter was sent via certified mail, return receipt requested, and provided notice of Kellogg's violations of the CLRA. It demanded that Kellogg correct, repair, replace, or otherwise rectify the unlawful, unfair, false, and deceptive practices complained of herein. The letter also stated that if Kellogg refused to do so, Valdez, the Kerstetters, and Teperson would file an amended complaint seeking damages in accordance with the CLRA.

111. Kellogg failed to respond appropriate to Valdez, the Kerstetters, and Teperson's letter. It did not respond and did not agree to rectify the violations or to give notice to all affected consumers within 30 days of written notice.[49] Valdez, the Kerstetters, and Teperson therefore seek all legal damages available under the CLRA, including statutory, punitive, and actual damages, as appropriate.[50]

---

[46] Cal. Civ. Code § 1780(d).

[47] *Id.* § 1782(d).

[48] *Id.* § 1780(e).

[49] *Id.* § 1782(b)

[50] *Id.* § 1782(d).

FIRST AMENDED CLASS ACTION COMPLAINT

# FOURTH CAUSE OF ACTION
Breach of Express Warranty
Cal. Com. Code § 2313
(On Behalf of the California Class)

112. Valdez, the Kerstetters, and Teperson repeat and re-allege the allegations contained in every preceding paragraph as if fully set forth herein.

113. Under the California Commercial Code, "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise."[51] And "[a]ny description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description."[52]

114. Kellogg has expressly warranted on the packaging of the Products that they are organic, as described above.

115. These representations are (1) are an affirmation of fact or promise made by Kellogg to consumers that the Products are organic; (2) became part of the basis of the bargain to purchase the Products when Valdez, the Kerstetters, Teperson, and the California Class members relied on the representations; and (3) created an express warranty that the Products would conform to that affirmation of fact or promises. In the alternative, the representation about the Products is a description of goods which was made as part of the basis of the bargain to purchase the Products, and which created an express warranty that the Products would conform to the product description.

116. Valdez, the Kerstetters, Teperson, and the California Class members reasonably and justifiably relied on the foregoing express warranty, believing that the Products did in fact conform to that warranty.

---

[51] Cal. Com. Code § 2313(1)(a).
[52] *Id.* § 2313(1)(b).

FIRST AMENDED CLASS ACTION COMPLAINT

117. Kellogg has breached the express warranty made to Valdez, the Kerstetters, Teperson, and the California Class members by representing that its Products are organic, when, in reality, the Products contain synthetic, non-organic PFAS.

118. Valdez, the Kerstetters, Teperson, and the California Class members pad a premium price for the Products but did not obtain the full value of the Products as represented. If Valdez, the Kerstetters, Teperson, and the California Class members had known the true nature of the Products, they would not have been willing to pay the premium price associated with the Products.

119. As a result, Valdez, the Kerstetters, Teperson, and the California Class members suffered injury and deserve to recover all damages afforded under the law.

## FIFTH CAUSE OF ACTION
Breach of Implied Warranty
Cal. Com. Code § 2314
(On Behalf of the California Class)

120. Valdez, the Kerstetters, and Teperson repeat and re-allege the allegations contained in every preceding paragraph as if fully set forth herein.

121. In California, "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind."[53] For goods to be merchantable, they must at least "[c]onform to the promises or affirmations of fact made on the container or label if any."[54]

122. Kellogg is a merchant with respect to the sales of the Products. A warranty of merchantability is thus implied in every contract for sale of the products to Valdez, the Kerstetters, Teperson, and the California Class members.

123. By advertising the Products with their current packaging, Kellogg made an implied promise that the Products were organic. Because the Products contain synthetic, non-organic PFAS, they are not organic, and the Products have not conformed to the promises on the container or label. Valdez, the Kerstetters, Teperson, and the California

---

[53] Cal. Com. Code § 2314(1).
[54] *Id.* § 2314(2)(f).

FIRST AMENDED CLASS ACTION COMPLAINT

Class members did not receive the goods as impliedly warranted by Kellogg to be merchantable.

124. As such, the Products are not merchantable under California law and Kellogg has breached its implied warranty of merchantability with regard to the Products.

125. If Valdez, the Kerstetters, Teperson, and the California Class members had known that the Products contained PFAS, they would not have been willing to pay the premium price associated with organic soil and fertilizer. As a direct and/or indirect result of Kellogg's breach, Valdez, the Kerstetters, Teperson, and the California Class members have suffered injury and are entitled to recover all damages afforded under the law.

**SIXTH CAUSE OF ACTION**
Violation of the New York Consumer Protection from Deceptive Acts & Practices Act
N.Y. Gen. Bus. Law § 349
(On Behalf of the New York Class)

126. Waldner repeats and re-alleges the allegations contained in every preceding paragraph as if fully set forth herein.

127. Waldner has standing to pursue this claim because she has suffered injury-in-fact and has lost money or property because of Kellogg's unlawful, unfair, and fraudulent actions, as alleged above.[55]

128. The New York Consumer Protection from Deceptive Acts and Practices Act (NYDAP) prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce" in the State of New York.[56]

129. Kellogg's acts and practices were consumer-oriented because they undermined the ability of consumers, including Waldner and the New York Class, to evaluate their market options and to make free and intelligent choices.

130. Kellogg knowingly and/or willfully committed deceptive acts and practices in violation of the NYDAPA by engaging in a false advertising campaign that misled consumers into believing that by purchasing Kellogg's organic soil and/or fertilizer

---

[55] *See infra* ¶¶ 11–12.
[56] N.Y. Gen. Bus. Law § 349(a).

Products, they were receiving a product that only contained organic ingredients, when, in reality, the Products contain synthetic, inorganic PFAS.

131. Kellogg made its false and misleading advertisements to increase the sales of the Products. Kellogg knew, or should have known, that consumers, including Waldner and the New York Class, would believe that a soil or fertilizer labeled organic would be free from synthetic, inorganic chemicals like PFAS.

132. Waldner and the New York Class acted as reasonable consumers in relying upon the deceptive acts and practices alleged above when purchasing the Products. Kellogg's conduct is thus likely to mislead reasonable consumers acting reasonably under the circumstances. If Waldner and the New York Class had known that the Products were not organic and contained synthetic, inorganic forever chemicals like PFAS, they would not have purchased the Products, they would not have purchased as many Products, and they would not have paid the price premium that organic products command. Indeed, no consumer would purchase an organic product unless they believed the product was organic.

133. Kellogg's deceptive acts and practices are immoral, unethical, oppressive, unscrupulous, unconscionable, and/or substantially injurious to Waldner and the New York Class.

134. Kellogg's violations caused injury to Waldner and the New York Class. Waldner and the New York Class have paid, and/or will continue to pay, money for the Products that they otherwise would not have paid but for Kellogg's deceptive acts and practices in violation of the NYDAPA. Kellogg is liable to Waldner and the New York Class because those money paid for the Products directly result from Kellogg's unlawful conduct.

135. In addition, Kellogg's conduct continues to deceive the public. Kellogg's false and misleading advertisements are likely to deceive current and prospective consumers making corresponding public injunctive relief necessary.[57]

---

[57] N.Y. Gen. Bus. Law § 349(h).

FIRST AMENDED CLASS ACTION COMPLAINT

136. Therefore, Waldner and the New York Class seek damages, remedies, fees, and costs available under the NYDAPA, including, but not limited to, injunctive relief, recovery of actual damages and/or $50 per violation in statutory damages, whichever is greater, as well as treble damages, reasonable attorney's fees, and all other remedies this Court deems proper.[58]

### SEVENTH CAUSE OF ACTION
Violation of the New York False Advertising Act
N.Y. Gen. Bus. Law § 350
(On Behalf of the New York Class)

137. Waldner repeats and re-alleges the allegations contained in every preceding paragraph as if fully set forth herein.

138. Waldner has standing to pursue this claim because she has suffered injury-in-fact and has lost money or property because of Kellogg's unlawful, unfair, and fraudulent actions, as alleged above.

139. The New York False Advertising Act (NYFAA) makes "[f]alse advertising in the conduct of any business, trade or commerce" unlawful.[59] False advertising "means advertising, including labeling of a commodity . . . if such advertising is misleading in a material respect," taking into account not only representations, "but also the extent to which the advertising fails to reveal facts material in light of such representations with respect to the commodity . . . ."[60]

140. Kellogg's acts and practices as described herein were consumer-oriented because they undermined the ability of consumers, including Waldner and the New York Class, to evaluate their market options and to make free and intelligent choices.

141. Kellogg violated the NYFAA by publicly disseminating false, misleading, and unsubstantiated advertisements regarding the Products. Specifically, Kellogg engaged in a false advertising campaign that misled consumers into believing that by purchasing Kellogg's organic soil and/or fertilizer Products, they were receiving a

---

[58] *Id.*
[59] *Id.* § 350.
[60] *Id.* § 350-a(1).

FIRST AMENDED CLASS ACTION COMPLAINT

product that only contained organic ingredients, when, in reality, the Products contain synthetic, inorganic PFAS.

142. Kellogg intentionally and knowingly misled consumers by making untrue and misleading statements about the benefits of its Products with intent to mislead Waldner and the New York Class.

143. Kellogg's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Waldner and the New York Class, about its Products. Waldner and the New York Class acted reasonably in relying upon the deceptive acts and practices alleged above when purchasing the Products. Kellogg's conduct is thus likely to mislead reasonable consumers acting reasonably under the circumstances.

144. Kellogg's violation of the NYFAA, through its unlawful, unfair, and fraudulent business practices, are ongoing and present a continuing threat that Waldner, the New York Class, and the public, who will be deceived into purchasing Products. These false statements led to financial damage for consumers like Waldner and the Class.

145. As a direct and proximate result of Kellogg's misleading and false advertisements, as well as Kellogg's deceptive and unfair acts and practices, Waldner and the New York Class suffered ascertainable loss and actual damages.

146. Waldner and the New York Class thus seek all damages, remedies, fees, and costs available under the NYFAA, including, but not limited to, injunctive relief, recovery of actual damages and/or $500 per violation, whichever is greater, as well as treble damages, reasonable attorney's fees, and all other remedies this Court deems proper.[61]

### EIGHTH CAUSE OF ACTION
Unjust Enrichment
(On Behalf of Both Classes)

147. Valdez, the Kerstetters, Teperson, and Waldner repeat and re-allege the allegations contained in every preceding paragraph as if fully set forth herein.

_____
[61] N.Y. Gen. Bus. Law §§ 350-d(a), 350-e(3).

32

FIRST AMENDED CLASS ACTION COMPLAINT

148. Valdez, the Kerstetters, Teperson, Waldner, and Class members conferred a benefit on Kellogg in the form of the gross revenues Kellogg derived from the money they paid for the Products.

149. Scott had an appreciation or knowledge of the benefit conferred upon it by Valdez, the Kerstetters, Teperson, Waldner, and Class members.

150. Kellogg has been unjustly enriched in retaining the revenues derived from Valdez, the Kerstetters, Teperson, Waldner, and Class members' purchases of the Products. It is inequitable and unjust for Kellogg to retain these revenues because Kellogg falsely represented that the Products were organic. This caused injuries to Valdez, the Kerstetters, Teperson, Waldner, and Class members because they would not have purchased the Products, or would have paid less for them, had they known the truth about the Products.

151. Kellogg accepted and retained the benefit in the amount of the gross revenues it derived from sales of the Products to Valdez, the Kerstetters, Teperson, Waldner, and Class members.

152. Kellogg has thereby profited by retaining the benefit under circumstances that would make it unjust for Kellogg to do so.

153. Valdez, the Kerstetters, Teperson, Waldner, and Class members are therefore entitled to restitution in the form of the revenues derived from the sales of Kellogg's products.

154. As a direct and proximate cause of Kellogg's unjust enrichment, Valdez, the Kerstetters, Teperson, Waldner, and Class members are entitled to restitution, disgorgement, and/or the imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Kellogg from its deceptive, misleading, and unlawful conduct as alleged here.

FIRST AMENDED CLASS ACTION COMPLAINT

## VII.   **PRAYER FOR RELIEF**

For these reasons, Valdez, the Kerstetters, Teperson, and Waldner pray for judgment against Kellogg as follows:

a.     certifying the Class, appointing Valdez, the Kerstetters, Teperson, and Waldner as Class Representatives, and appointing their counsel as Class Counsel;

b.     ordering restitution and disgorgement of all profits and unjust enrichment that Kellogg obtained from Valdez, the Kerstetters, Teperson, Waldner, and the Classes as a result of its unlawful, unfair, and fraudulent business practices;

c.     awarding Valdez, the Kerstetters, Teperson, Waldner and the Classes all applicable actual, statutory, and punitive damages;

d.     awarding declaratory and injunctive relief as permitted by law or equity, including enjoining Kellogg from continuing the unlawful practices as set forth herein, and directing Kellogg to identify, with Court supervision, victims of its conduct and pay them all money it is required to pay;

e.     ordering Kellogg to engage in a corrective advertising campaign;

f.     ordering Kellogg to pay attorney's fees and litigation costs;

g.     ordering Kellogg to pay both pre- and post-judgment interest on any amounts awarded; and

h.     ordering such other and further relief as may be just and proper.

## VIII.  **DEMAND FOR JURY TRIAL**

Valdez, the Kerstetters, Teperson, and Waldner demand a trial by jury of all claims so triable.

Dated: January 30, 2026

By:  */s/ Jennifer M. French*
Jennifer M. French, Cal. State Bar No. 265422
Email: jennf@lcllp.com
*Attorneys for Plaintiffs and the Putative Class*

FIRST AMENDED CLASS ACTION COMPLAINT